UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| T.C.<br><br>    *Petitioner*,<br><br>    v.<br><br>BRIAN A. KYES, United States Marshal, District of Massachusetts,<br><br>    *Respondent*. | Docket No. 24-cv-12458-ADB |

**AMENDED PETITION FOR HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241**

1. Petitioner T.C., a seventeen-year-old natural-born U.S. citizen with no prior criminal record, is currently in federal custody pending extradition proceedings in the District of Massachusetts. T.C. is held at the Massachusetts Department of Youth Services (DYS) based on placement decisions made by the United States Marshal for the District of Massachusetts. See *In re Extradition T.C.*, 24-mj-01365-DLC (D. Mass).

2. T.C. is seeking review of the Magistrate Judge's February 11, 2025 Order, attached hereto as Exhibit 1, denying T.C.'s motion to dismiss and ordering the certification of his extradition to the Secretary of State.

**PARTIES**

3. Petitioner T.C., is a seventeen-year-old natural-born U.S. citizen who has family in Massachusetts and who, prior to his arrest, resided with his mother in Turkey. T.C. is presently in the custody of DYS.

4. Respondent Brian A. Keyes is the United States Marshal for the District of Massachusetts. T.C., is in custody at DYS under the authority of Marshal Keyes.

## JURSIDICTION AND VENUE

5.  Jurisdiction is proper in this Court, *inter alia*, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2241.

6.  Venue is appropriate in this Court because T.C. is being held in Massachusetts.

## FACTUAL BACKGROUND AND CASE HISTORY

*Extradition Request*

7.  On May 3, 2024, the United States sought an arrest warrant for T.C. in the United States District Court for the Southern District of Florida based on a request from the Turkish government. *See In re Extradition T.C.*, 24-mj-01365-DLC, Dkt. 5-1 (D. Mass). The extradition complaint filed by the United States alleges that T.C. was speeding in Istanbul, Turkey, and unable to swerve away from a disabled ATV on the side of the road when he accidentally caused the death of one ATV passenger and injuries to others. T.C. was not alleged to have been intoxicated, nor to have shown any disregard for his circumstances. *Id.* Rather, after the accident he and the others with him remained on site for approximately forty minutes waiting for the ambulance, firetruck and police to arrive. After help arrived, T.C.'s mother picked up T.C. and certain of his friends and thereafter determined that she and T.C. would leave Turkey for the United States, where T.C. had citizenship. T.C.'s mother purchased airline tickets and otherwise made travel arrangements. Throughout, T.C. obeyed his mother, and he neither planned nor requested to be removed from Turkey.

8.  T.C.'s mother took T.C. to the United States because of their close family ties in Massachusetts; his aunt, uncle, and cousin are long-term residents. *Id.* at Dkt. 86 at 2-3. When T.C. was younger, they visited him in Turkey and T.C. visited them in the United States. *Id.* After T.C.'s mother brought him to Massachusetts, they first settled in an AirBnB on Plum Island and then

subsequently signed a one-year lease in Haverhill. *Id.* at Dkt. 92 at 2. During this time, T.C. saw his aunt and uncle on multiple occasions. *Id.* T.C.'s aunt assisted him with his medical care, including receiving treatment for his skin condition and his dental care. *Id.* at Dkt. 86 at 2-3. T.C.'s mother enrolled him in Haverhill Public Schools and, at the time of the arrest, was exploring private school options in the area. *Id.* at Dkt. 92 at 2.

9. The United States extradition complaint alleges that "T.C. is wanted for prosecution on a charge of Causing Reckless Killing and Injury in violation of and punishable by Articles 85/2 and 31/3 of the Criminal Code of Türkiye." *Id.* at Dkt. 5-1 at 1. The Turkish government's submission which was attached to the complaint, however, states that the purpose of T.C.'s arrest and extradition is to subject him to "interrogation" and to take "his statement" in order to "evaluate[]" whether charges should be brought. Exhibit 2 at 151;[1] Dkt. 70-3 at 59. Indeed, throughout its submission, the Turkish government basis its extradition request on investigatory need rather than a pending criminal prosecution or charge. *See* Exhibit 2 at 101; Dkt. 70-3 at 9 ("An investigation is being conducted by our Chief Public Prosecutor's Office for the offense of Reckless Killing and Reckless Injury allegedly com-mitted by [T.C.], a juvenile pushed to crime. I hereby request that the juvenile, who is reported to be in your country, be extradited to Türkiye so that the investigation against him can be concluded."); Exhibit 2 at 96; Dkt. 70-3 at 4 ("Pursuant to Article 3 of the Child Protection Law No.5395, the term 'Juvenile Pushed to the Crime' is used for the individuals under the age of 18, in relation to whom an investigation or prosecution is conducted for allegedly committing an act, defined as an offence by the Laws. Therefore, the term 'Juvenile Pushed to the Crime' is also used for [T.C.] [] in the investigation, carried out by our

---

[1] With this Honorable Court's permission, T.C. intends to submit an unredacted copy of the Turkish government's submission under seal. A redacted copy of the submission is available at *In re Extradition T.C.*, 24-mj-01365-DLC, Dkt. 70-1; 70-2; 70-3.

Chief Public Prosecutor's Office.").

10. T.C. was arrested while visiting schools in the District of Massachusetts on June 14, 2024. That same day, the government filed its request for Detention Pending Extradition Proceedings. *In re Extradition T.C.*, 24-mj-01365-DLC, Dkt. 7.

*Incarceration at Manson Youth Institute*

11. After T.C's first appearance, he was transported to Manson Youth Institution in Cheshire, Connecticut. Once T.C. arrived at Manson on June 14, 2024, he was kept in isolation without any belongings or even a pillow for three days in a room that was lit 24 hours a day. *Id.* at Dkt. 22. His isolation was not due to any perceived rule infraction or mental health issue. *Id.* Moreover, T.C. was not provided the opportunity during this time to call his father in Turkey and was housed with adults and convicted offenders. *Id.* at Dkt. 29 and 40. Manson also unlawfully disclosed T.C.'s booking photo[2] at the requests of journalists and Manson staff questioned T.C. about the allegations against him.

*Bail Request and Detention Order*

12. On June 18, 2024, T.C. filed his request for release from custody arguing *inter alia* that T.C.'s age, the unconstitutional conditions at Manson,[3] and the ongoing violations of his constitutional and privacy rights constituted "special circumstances" warranting his release on bond. The Magistrate Judge denied T.C.'s request for bail on July 9, 2024, *see id.* at Dkt. 59.

---

[2] Conn.Gen.St. c. 815t § 46b-124 makes it unlawful to release juvenile records without a court order. *In re Extradition T.C.*, 24-mj-01365-DLC, Dkt. 29.
[3] Manson was previously found to have violated the constitutional rights of the juveniles under its care by, among other things, using excessive isolation. *In re Extradition T.C.*, 24-mj-01365-DLC, Dkt. 22, ex. 1, 2, 3.

*Incarceration at Essex*

13.     Shortly after the Magistrate Judge's order, Manson requested that the Marshals move T.C. due to complaints made by T.C's counsel to the Court regarding the conditions at Manson. *In re Extradition T.C.*, 24-mj-01365-DLC, Dkt. 74. On July 12, 2024, the Marshalls exercised their authority to move T.C. to the Essex County Juvenile Detention Center in Newark, NJ. *Id.*

14.     At Essex, T.C. was housed with adults in his unit. *See In re Extradition T.C.*, 24-mj-01365-DLC, Dkt. 65, 74, 86. Essex had less programming than Manson, and permitted less phone contact with his father. *Id.* Furthermore, Newark N.J. was farther from his lawyers and local aunt and uncle, leaving T.C. even more isolated than he had been in Connecticut. *Id.* Based on these worsening conditions of confinement, T.C. requested the Magistrate Judge to order the Marshals to transfer him to a DYS facility, *see In re Extradition T.C.*, 24-mj-01365-DLC, Dkt. 65, a motion which was denied on July 16, 2024, *Id.* at Dkt. 71. Instead, the Magistrate Judge offered, in his discretion, to ask the Marshals to transfer T.C. back to Manson if T.C. so requested. *Id.* at Dkt. 71. As bad as Manson was, the following day, T.C. made a request to be transferred back rather than remain at Essex in Newark. *Id.* at Dkt. 72. Manson, however, refused to take T.C. because of the allegations in counsel's filings. *Id.* at Dkt. 74.

15.     Just days after his transfer to Essex, on July 17, 2024, T.C. was brutally assaulted. *In re Extradition T.C.*, 24-mj-01365-DLC, Dkt. 74. T.C. was assaulted because he asked to use the phone when it was his turn. *Id.* Following the assault, T.C. was moved to a specialized unit for his own safety where, until his eventual transfer to DYS, he was in his cell for 18-23.75 hours per day, without any real access to school or the library. T.C. felt unsafe and isolated because he was "subjected to continuing and ongoing threats of violence" and began exhibiting symptoms of

"acute stress disorder". Exhibit 1 to Dkt. 104.

*Denial of Transfer to Massachusetts DYS*

16.     On July 16, 2024, Magistrate Judge Cabell denied T.C.'s requested transfer to a DYS facility. *In re Extradition T.C.*, 24-mj-01365-DLC, Dkt. 71. A further request to reconsider was made on July 19, 2024, following the assault, Dkt. 74, and a request to expedite an order on the subsequent request was made on August 5, 2024, Dkt. 96. No decision ultimately issued.

*Instant Litigation*

17.     Receiving no relief, T.C. initiated the instant litigation pursuant to 28 U.S.C. § 2241 seeking review of the Magistrate Judge's July 16, 2024 Order denying T.C.'s transfer to DYS, or alternatively, seeking review of the Magistrate Judge's July 9, 2024 Detention Order. *See* Dkt. 1. Following a hearing on October 2, 2024, T.C. was transferred to DYS custody on October 11, 2024, where he remains confined today. *See* Dkt. 14. This Honorable Court found T.C.'s Motion for Preliminary Injunction and/or Temporary Restraining moot on October 15, 2024, Dkt. 15, however, the case and T.C.'s initial petition remain pending. Rather than file a successive petition, T.C., with the government's written consent amended his initial petition to incorporate challenges to the Magistrate Judge's February 11, 2025 Order denying T.C.'s motion to dismiss and ordering the certification of his extradition to the Secretary of State.

18.     T.C. respectfully contends that the Magistrate Judge erred in denying his motion to dismiss and ordering the certification of his extradition to the Secretary of State. Both 18 U.S.C. § 3184 and the Treaty on Extradition and Mutual Assistance in Criminal Matters between the United States of America and the Republic of Turkey ("Treaty") require as conditions precedent the existence of criminal charges, *i.e.,* a definitive criminal prosecution, or the ongoing prosecution of those charges. However, the Turkish government's request is based solely on investigatory need

and fails to satisfy this fundamental prerequisite. T.C. respectfully contends that the clear "prosecuted for or have been charged with" language of the Treaty, which refer to legal preconditions, could only be understood by the U.S. signatories – two-thirds of the U.S. Senate and President Carter – as requiring more than an ongoing investigation or targeting of a non-charged, non-prosecuted U.S. citizen. That interpretation is not inconsistent with the First Circuit's decision in *Aguasvivas v. Pompeo*, 984 F.3d 1047, 1058 (1st Cir. 2021) (finding extradition unavailable for "a possible, yet-to-be-determined prosecution") and other decisions outside of this Circuit requiring, at minimum, an unequivocal intent to prosecute. *See e.g., Emami v. U.S. Dist. Ct. for N. Dist. of California*, 834 F.2d 1444, 1449 (9th Cir. 1987).

## COUNT I
### Arrest and Confinement
### in Violation of the Extradition Treaty with Turkey

19. Petitioner re-alleges and incorporates paragraphs 1 through 18 above, as if fully set forth herein.

20. Article 1 and 7 of the Treaty require extradition to be related to "a person being prosecuted or who is charged with an offense…" There is no provision that permits extradition based solely on allegations or investigatory need or because the person for whom extradition was being sought was the subject or target of an ongoing criminal investigation.

21. The Turkish government has neither charged nor initiated any prosecution of T.C. and accordingly cannot request his extradition under the Treaty's relevant provisions. Consequently, the Treaty's requirements have not been satisfied.

22. T.C.'s arrest, detention, and potential future extradition are therefore contrary to the requirements of the Treaty.

## COUNT II
### Arrest and Confinement in Violation of Section 3184

23. Petitioner re-alleges and incorporates paragraphs 1 through 22 above, as if fully set forth herein.

24. Section 3184 of Title 18 of the United States Code permits magistrate judges to issue warrants "for the apprehension of the person so charged" to hold a "hearing" to determine "the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention" and to "issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."

25. As detailed above, T.C. is neither charged nor being prosecuted by Turkey. Accordingly, the provisions of Section 3184, like the provisions of the Treaty, have not been satisfied.

26. T.C.'s arrest, detention, and potential future extradition are therefore contrary to 18 U.S.C. § 3184.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner requests that the Court immediately grant the following relief:

a. Issue a Writ of Habeas Corpus and/or any appropriate order reversing the decisions of Magistrate Judge Cabell denying T.C.'s motion to dismiss and certifying his extradibility; and

b. Grant Petitioner such other and further relief as the Court may deem just and appropriate.

Respectfully Submitted,

T.C., a Juvenile
By his attorneys,

*/s/ Martin G. Weinberg*
Martin G. Weinberg, Esq.
BBO #519480
20 Park Plaza
Suite 1000
Boston, MA 02116
(617) 227-3700

*/s/ Victoria Kelleher*
Victoria Kelleher
Kelleher & Maceo, P.C.
BBO #637908
53 State Street
Suite 500
Boston MA 02109
(978) 744-4126

*/s/ Maksim Nemtsev*
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
max@mnpc.law

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served on all counsel of record this day, February 25, 2025, and with the United States District Court, District of Massachusetts, 1 Courthouse Way, Boston, 02210.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.