UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| T.C.<br><br>    *Petitioner*,<br><br>          v.<br><br>BRIAN A. KYES, United States Marshal, District of Massachusetts,<br><br>    *Respondent*. | Docket No. 24-cv-12458-ADB |

**MEMORANDUM IN SUPPORT OF AMENDED PETITION FOR HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

Petitioner T.C. respectfully submits this memorandum in support of his Amended Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241, appealing, pursuant to *Wright v. Henkel*, 190 U.S. 40, 62 (1903) (recognizing habeas corpus as an appropriate mechanism to contest extradition),[1] the Magistrate Judge's February 11, 2025 Order denying T.C.'s motion to dismiss and ordering the certification of his extradition to the Secretary of State, *see* Dkt. 18-1. Specifically, T.C. challenges the Magistrate Judge's finding that T.C. has "been charged with an offense", Dkt. 18-1 at 31, consistent with the requirements of the Treaty on Extradition and Mutual Assistance in Criminal Matters between the United States of America and the Republic of Turkey ("Treaty") and 18 U.S.C. § 3184. As detailed below, T.C. respectfully contends that because he is

---

[1] *See also United States v. Kin-Hong*, 110 F.3d 103, 107–08 (1st Cir. 1997) ("Lui filed an amended petition for a writ of habeas corpus, the only avenue by which a fugitive sought for extradition (a "relator") may attack the magistrate judge's decision, with the district court."); *Koskotas v. Roche*, 931 F.2d 169, 171 (1st Cir. 1991) ("limited appellate review may be obtained only on a petition for writ of habeas corpus").

1

not the subject of a formal charge, indictment, or prosecution, but merely wanted for questioning, he cannot properly be extradited under a treaty that limits extraditable persons to those who have in fact been "charged" with or are "being prosecuted" for a criminal offense.

Separately but relatedly, T.C., through counsel, is in the process of submitting a petition to the Secretary of State challenging his extradition to Turkey on the grounds that, as a minor U.S. national, T.C. should not be extradited to a country that does not reciprocate similar requests,[2] and that T.C. is more likely than not to face serious harm in violation of the United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment if returned to Turkey. The current amended petition does not include a humanitarian-based challenge because, under the procedure recently endorsed by the District Court in *Taylor v. McDermott*, 516 F. Supp. 3d 94 (D. Mass. 2021), a petitioner must file a § 2241 petition after an adverse executive branch decision to challenge the Secretary of State's rulings on humanitarian grounds. Should the Secretary of State rule against T.C. while the current petition remains pending, T.C. intends to seek further amendment of his § 2241 petition, consistent with *Taylor v. McDermott*, 516 F. Supp. 3d 94, 112 (D. Mass. 2021), and *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 957 (9th Cir. 2012). This honorable court has the discretion to either address the merits of the substantive issue raised in the current petition or to defer its ruling pending the Secretary of State's decision and any subsequent request to further amend and include a humanitarian-ground appeal.

---

[2] *See e.g., United States v. Dermen*, 779 F. App'x 497, 501–02 (10th Cir. 2019) ("the government submitted the affidavit of a U.S. official responsible for extradition requests made to foreign countries [] [declaring] (1) our extradition treaty with Turkey does not require Turkey to surrender individuals for prosecution here; (2) Turkey has largely ignored extradition requests and has granted only one in the last three years; and (3) Turkish political leaders have stated Turkey's intent not to extradite fugitives to the U.S.").

## I.   BACKGROUND

On the night of March 1, 2024, T.C., a minor, is alleged to have been speeding near Istanbul, Turkey, and unable to swerve away from a disabled ATV on the side of the road when he accidentally caused the death of one ATV passenger and injuries to others. Dkt. 18-2 (filed under seal) at 96, 98, 130-31, 135-37. T.C. was not alleged to have been intoxicated. *Id.* at 99 ("It was understood that the individuals, whose statements were taken, did not state that [T.C.] was intoxicated. Furthermore, no alcohol bottle was found following the examination conducted in the vehicle and the place of the incident."). Soon after the accident, T.C.—at the direction of his mother—traveled to the Istanbul airport. *Id.* They departed for Cairo and ultimately arrived in the United States where he had citizenship having been born in Exeter, NH. *Id.* at 99, 143. T.C. was sixteen years old at the time of the alleged accident and is currently seventeen years old. Within days of the accident, the Istanbul Chief Public Prosecutor's Office began gathering witness statements and expert reports as part of what it labeled an "investigation."[3] Crucially, in its formal filings, the Prosecutor's Office repeatedly emphasized that it was conducting an ongoing inquiry to determine T.C.'s criminal liability under Article 85 of the Turkish Criminal Code ("causing reckless killing and injury"). *Id.* at 96. The Prosecutor expressly noted the need to "conclude[]" the "investigation" by taking T.C.'s statement:

> An investigation is conducted by our Chief Public Prosecutor's Office for the offence of Reckless Killing and Reckless Injury allegedly committed by [T.C], a juvenile pushed to crime. I hereby request that the juvenile pushed to crime, who is reported to be in your country, be extradited to Turkey so that the investigation against him can be concluded.

---

[3] *Id.* at 96 ("Pursuant to Article 3 of the Child Protection Law No.5395, the term 'Juvenile Pushed to the Crime' is used for the individuals under the age of 18, in relation to whom an investigation or prosecution is conducted for allegedly committing an act, defined as an offence by the Laws. Therefore, the term 'Juvenile Pushed to the Crime' is also used for [T.C.] in the investigation, carried out by our Chief Public Prosecutor's Office."); *Id.* at 128 (referring to "investigation conducted by your Prosecutor's Office concerning [T.C.]…").

*Id.* at 101; *see also id.* at 151. In other words, the Prosecutor repeatedly referenced the need to complete the "investigation" by questioning T.C. as the purpose of arrest and extradition—rather than the need to proceed with an already-filed criminal charge or pending prosecution.

On March 7, 2024, a Turkish court issued a document described as an "arrest warrant". *Id.* at 149-151. Although styled a warrant, it calls for T.C.'s apprehension so that he could be brought before investigating officials for "interrogation" so that prosecutors can "evaluate[]" his statement – a step preceding prosecution in Turkish criminal procedure.[4]  *Id.* at 151. The warrant does not cite any filed indictment, nor does it mention a final decision to prosecute. Rather, it is explicitly tied to gathering T.C.'s statement to determine whether a prosecution should commence.

On June 14, 2024, T.C. was arrested in the District of Massachusetts while visiting schools. He made his initial appearance and was detained. He remains in the custody of the U.S. Marshal for the District of Massachusetts. On July 29, 2024, T.C. filed a motion to dismiss the extradition complaint arguing that the lack of a criminal prosecution or formal charge in Turkey exempts him from extradition under the Treaty. *In re extradition of T.C.*, Docket No. 24-mj-01365-DLC, Dkt. 87 (D. Mass). A decision on the motion was deferred until the extradition hearing. *Id.* at Dkt. 88, 123. Following an oral argument on October 15, 2024, the parties made further submissions, *Id.* at Dkt. 151, 154, 155. On February 11, 2025, the Magistrate Judge denied T.C.'s motion to dismiss and certified his extradibility to the Secretary of State. Dkt. 18-1. Despite T.C.'s motion pending

---

[4] The Turkish government's own submission details two different phases of criminal prosecution – the "investigatory phase" and the "prosecution phase", *id.* at 102-03. During the "investigatory phase" "evidence" is "collected" and a "challenge against the decision … to prosecute" can be brought. *Id.* During the "prosecution phase" a defendant participates in a "public lawsuit". *Id.* The request to interrogate T.C. falls within the "investigatory phase" described by the Turkish government's submission.

4

since July 29, 2024, the Turkish government has not supplemented its request with an actual charge or expressed any intent to prosecute, rather than simply investigate, T.C.

The Magistrate Judge certified T.C. for extradition concluding that the Turkish warrant and accompanying documentation sufficiently demonstrated T.C. was "charged" under the Treaty. Dkt. 18-1. T.C. now seeks review of this finding, maintaining that an arrest warrant issued solely to facilitate questioning or further investigation is not tantamount to a formal charge or pending prosecution.

## II.    ARGUMENT

Under 18 U.S.C. § 3184 and the terms of the Treaty, a magistrate judge may certify an individual for extradition only if that individual is "being prosecuted for or ha[s] been charged with … or convicted of" an extraditable offense under the Treaty. Article 1(1) of Treaty, Dkt. 18-2 at 7. During an extradition hearing one of the inquiries that the extraditing court must make is "whether charges are pending against the person to be extradited in the requesting nation." *In re Extradition of Salas*, 161 F. Supp. 2d 915, 923 (N.D. Ill. 2001); *In re Extradition of Sidali*, 899 F. Supp. 1342, 1346 (D.N.J. 1995) (same). This pre-condition and inquiry ensure that extradition is reserved for those facing an actual pending legal action—not mere investigation or suspicion. *See Vitkus v. Blinken*, 79 F.4th 352, 366 (4th Cir. 2023) (treaty "does not permit the extradition of a person not yet criminally charged"); *Aguasvivas v. Pompeo*, 984 F.3d 1047, 1058 (1st Cir. 2021) (recognizing that a "possible, yet-to-be-determined prosecution" is, as here, insufficient). Likewise, the language of 18 U.S.C. § 3184 limits extradition to someone "char[ed]… with having committed within the jurisdiction of any such foreign government any of the crimes provided by such treaty or convention…" The statute also requires a hearing of "the person so charged" to ensure that "the evidence of criminality may be heard and considered." Neither § 3184 nor the

5

Treaty authorize extradition for investigatory purposes. Further, § 3184 does not create a charge in the United States for someone who has not been charged in Turkey. In other words, the complaint in this case rests on the mistaken premise that the U.S. can arrest "the person so charged" even when the individual is merely the subject of an ongoing foreign investigation—without any formal charge being brought alleging that they actually committed the crime referenced in the complaint.

The Supreme Court has long emphasized that extradition is "the surrender by one nation to another of an individual accused or convicted of an offense." *Terlinden v. Ames*, 184 U.S. 270, 289 (1902). It follows that extradition treaties do not authorize sending a person to a foreign jurisdiction merely for authorities to gather more evidence.[5] Indeed, the rule of specialty—embedded in most extradition treaties—further confirms that actual charges, not speculation, must anchor any extradition request. *See United States v. Rauscher*, 119 U.S. 407, 430 (1886). Here, neither the Turkish documents nor the U.S. government's submissions demonstrate that T.C. faces a formal charge or is the subject of active prosecution. Instead, the Turkish prosecutor explicitly states a need to "[c]onclude the investigation" before deciding on a formal charge. D. 18-2 at 101. The Prosecutor highlights T.C.'s status as a "juvenile pushed to crime" in an open inquiry under Turkish law. *Id.* at 96, 101. In short, the Turkish government's own submission confirms that it has not completed their investigative phase or charged T.C. That is precisely the scenario the statute and treaty language exclude.

Requiring an active charge or prosecution is consistent with the plain language of Article 1 of the Treaty:

---

[5] To find otherwise would mean that individuals outside the United States would be subject to extradition to the United States with a Department of Justice subject or target letter.

> The Contracting Parties undertake to surrender to each other, in accordance with the provisions and conditions laid down in this Treaty, all persons who are found within the territory of the Requested Party and ***who are being prosecuted for or have been charged with an offense***, or convicted of an offense, or are sought by the other Party for the enforcement of a judicially pronounced penalty for an offense committed within the territory of the Requesting Party.

Article 1(1) of Treaty, Dkt. 18-2 at 7. By its plain text, "charged" or "prosecuted" requires an ongoing criminal prosecution. *See* PROSECUTION, Black's Law Dictionary (12th ed. 2024) ("A criminal proceeding in which an accused person is tried"); Merriam-Webster. (n.d.-b). *Prosecute definition & meaning*. Merriam-Webster. https://www.merriam-webster.com/dictionary/prosecute ("to institute and carry on a legal suit or prosecution"); CHARGE, Black's Law Dictionary (12th ed. 2024) ("A formal accusation of an offense as a preliminary step to prosecution."); CHARGE, Black's Law Dictionary (12th ed. 2024) ("To accuse (a person) of an offense"). A treaty, like a statute, is interpreted consistent with its "plain meaning" unless doing so would contradict "the intent or expectations of the signatories." *Bhutta v. Comm'r of Internal Revenue*, 145 T.C. 351, 360 (2015); *E. Airlines, Inc. v. Floyd*, 499 U.S. 530, 534 (1991) ("When interpreting a treaty, we begin with the text of the treaty and the context in which the written words are used.") (internal citations and quotations omitted). "Because the plain language [] is 'unambiguous,' 'our inquiry begins with the statutory text, and ends there as well'" *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018) (*quoting BedRoc Limited, LLC v. United States*, 541 U.S. 176, 183 (2004)).

There is no evidence that the intent of the U.S. signatories – two-thirds of the U.S. Senate and President Carter – was to permit extradition for anything less than an ongoing criminal prosecution or formal charge. There is no evidence that the U.S. signatories would ever have understood the words "being prosecuted" or "charged" as indicating that a person, here a U.S. citizen, would be subject to extradition absent formal allegations of the commission of a crime rather than just for investigation. "Being prosecuted" is not the same as "being investigated" or

7

"wanted for a possible future prosecution," just as "charged" is not the same as "maybe charged" or "probably will be charged in the future". Moreover, based upon information and belief, as well as representations from Turkish counsel, Turkish law permits detention for up to five years during an ongoing investigation (as is currently the case for T.C.) before T.C., if eventually charged, would brought before a Turkish court on the merits of the accusation. Such circumstances would not have been contemplated or agreed to by the U.S. signatories, who purposefully used the terms "charged" or "being prosecuted" in the sense understood within U.S. criminal law. Put simply no U.S. signatory would understand "charged" and "being prosecuted" to mean someone subject to suspicion or investigation; rather, they would have understood the terms to require something akin to a formal criminal complaint or indictment. Where, as here, a treaty uses clear phrasing—"who are being prosecuted for or have been charged"—courts cannot and should not broaden it to cover mere investigative targets or permit extradition to satisfy investigatory needs.

In *Aguasvivas*, the First Circuit rejected an extradition request from the Dominican Republic finding that an arrest warrant without a formal charge did not satisfy the treaty's requirement that the request include a "document setting for the charge." 984 F.3d at 1058 ("So here we have an application for extradition that includes no indictment or criminal complaint only because no complaint exists and apparently no indictment has even been sought. In short, this case concerns a request to extradite for arrest and questioning in anticipation of a possible, yet-to-be-determined prosecution."). The decision was reinforced by the treaty's explicit requirement for a charging "document". *Aguasvivas*, 984 F.3d at 1060. The First Circuit has yet to address the precise issue in this case – whether an investigatory need unaccompanied by a formal charge is sufficient to satisfy the requirements of a treaty mandating that the relator be "prosecuted for or

ha[s] been charged with" an extraditable offense when the treaty contains no explicit provision, as here, requiring the production of charging documents.

While the *Aguasvivas* court cited *Emami v. U.S. Dist. Ct.*, 834 F.2d 1444 (9th Cir. 1987) and *In re Assarsson*, 635 F.2d 1237 (7th Cir. 1980), as recognizing that some treaties may not require the formal filing of charges, both cases are distinguishable. *Aguasvivas*, 984 F.3d at 1059-60. In *Emami*, the German government expressly stated in its requests for "provisional arrest" and "extradition" that "Emami is wanted for prosecution." 834 F.2d 1444, 1449 (9th Cir. 1987). Similarly, in *Assarsson*, the Swedish government filed a petition for his arrest, accusing him of multiple offenses, including gross arson and fraud. 635 F.2d at 1239. A Swedish court, relying on the equivalent of an affidavit supporting a criminal complaint, found that Assarsson was "suspected on good grounds" of committing the crimes and formally declared him arrested. *Id*. Thus, in both cases, there was no uncertainty that the individuals had been charged with an offense or were the subject of an active prosecution. This stands in contrast to the present case, where the arrest warrant and extradition request are based solely on an incomplete investigation and an asserted, explicit need for further inquiry.

*Emani* and *Assarsson* are consistent with other cases requiring, at minimum, as a prerequisite to extradition an unequivocal intent to prosecute. *See Sacirbey v. Guccione*, 589 F.3d 52, 63 (2d Cir. 2009) ("'Bosnia has repeatedly and unambiguously' indicated its intention to prosecute Sacirbey."); *Al-Nouri v. Blinken*, No. CV-22-00633-PHX-GMS, 2024 WL 4436612, at *10 (D. Ariz. Oct. 7, 2024) ("Iraq's statements of intention to charge are sufficient to satisfy the requirements of the Treaty."). Other cases relied on by the Magistrate Judge are no different. In *Manrique v. Kolc*, the Ninth Circuit considered the case of a former Peruvian president accused of "allegedly accepting millions of dollars in bribes during his presidency," who had been charged

9

via an "Acusación Fiscal." 65 F.4th 1037, 1040 (9th Cir. 2023). The court concluded that an "Acusación Fiscal," described as "a document produced at the end of an investigation that lays out the crimes allegedly committed and supporting evidence," met the "charged with" requirement of the Peru–United States extradition treaty. *Id. In re Extradition of Handanovic*, the court found consistent with *Emami* that "a valid arrest warrant" coupled with "an intention to prosecute" was required for extradition. 829 F. Supp. 2d 979, 986 (D. Or. 2011). Here, by contrast, the sole intent expressed by the Turkish government in its extradition request and accompanying arrest warrant is to investigate. Despite the passage of months, the Turkish government has neither obtained a formal charge nor supplemented its submissions to indicate a clear and unambiguous intent to prosecute T.C. Accepting the positions of the government and Turkey would permit any U.S. citizen sought for questioning by Turkey or another foreign government that is a signatory to a Treaty limiting extradition to persons "charged" or "being prosecuted" to be arrested, detained, and extradited. This outcome contradicts § 3184, the Treaty, and the established purposes of extradition as recognized by the Supreme Court, Congress, and the President.

Finally, in other published decisions involving the relevant Treaty with Turkey, the extradition requests were not based on an arrest warrant seeking further investigation. Instead, they rested on a court decision—described as "like an Indictment"—or an actual judgment of conviction indicating that the Turkish government itself distinguishes a prosecution from an investigation. *See In re Extradition of Atuar*, 300 F. Supp. 2d 418, 422 (S.D.W. Va. 2003) (finding that a "March 20, 1992, Decision of the State Security Court of the Republic of Turkey charging [relator] with selling and purchasing heroin in violation of Articles 403/5, 6, and 7 of the Turkish Criminal Code and stating in detail the factual basis for the charges" "is a charging document somewhat like an Indictment which justifies the issuance of an arrest warrant in the United States"); *Matter of*

*Extradition of Sidali*, 899 F. Supp. 1342, 1347 (D.N.J. 1995) ("the Court finds that the judgment of the Turkish Court, when considered in light of Turkish law, constitutes a final judgment or 'conviction'."). In light of this, T.C. should not be removed to face indefinite detention and interrogation when Turkey itself has yet to decide whether to prosecute him.

### III. CONCLUSION

Allowing extradition under these circumstances would permit foreign governments to demand surrender of U.S. citizens (including minors) for questioning rather than for actual trial. That unmoors the Treaty from its core function—returning persons that are being prosecuted for or charged with crimes—and would chill the protections historically afforded by 18 U.S.C. § 3184. For the foregoing reasons, T.C. respectfully requests that this Court vacate the Magistrate Judge's finding of extraditability and deny Turkey's request for extradition. Because Turkey has not formally charged or prosecuted T.C.—and instead is pursuing his presence for questioning in an ongoing investigation—the legal prerequisites for extradition remain unsatisfied. This Court should therefore grant habeas relief consistent with the fundamental principle that a person may be extradited only upon an actual charge or conviction.

Respectfully Submitted,

T.C., a Juvenile
By his attorneys,

*/s/ Martin G. Weinberg*
Martin G. Weinberg, Esq.
BBO #519480
20 Park Plaza
Suite 1000
Boston, MA 02116
(617) 227-3700

*/s/ Victoria Kelleher*
Victoria Kelleher

11

Kelleher & Maceo, P.C.
BBO #637908
53 State Street
Suite 500
Boston MA 02109
(978) 744-4126

*/s/ Maksim Nemtsev*
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
max@mnpc.law

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of this document was served on all counsel of record this day, March 10, 2025, and with the United States District Court, District of Massachusetts, 1 Courthouse Way, Boston, 02210.

*/s/ Martin G. Weinberg*
Martin G. Weinberg, Esq.