UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| T.C.<br><br>    *Petitioner*,<br><br>        v.<br><br>BRIAN A. KYES, United States Marshal, District of Massachusetts,<br><br>    *Respondent*. | Docket No. 24-cv-12458-ADB<br><br>(Leave to file granted on April 9, 2025) |

**REPLY IN SUPPORT OF AMENDED PETITION FOR HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

Petitioner T.C., through counsel, respectfully submits this reply to the Government's Response, Dkt. 27.

The Government invokes the notion of "shared expectations" between the United States and Turkey under the Treaty yet cites no diplomatic notes, nor any official interpretive materials, to substantiate its interpretation that the Treaty permits extradition absent a formalized accusation or ongoing prosecution. Without formal evidence of such shared expectations, the Government's urging of deference is misplaced. *See World Holdings, LLC v. Fed. Republic of Germany*, 794 F. Supp. 2d 1305, 1320 (S.D. Fla. 2011) (explaining that while treaties are interpreted liberally, "[t]his does not mean ... that treaty provisions are construed broadly," but rather that courts may "look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties" "when interpreting difficult or ambiguous treaty provisions") (internal citation and quotations omitted). Accordingly, even under the canon favoring a liberal interpretation of treaties, a court should not endorse an expansive reading that lacks support in the Treaty's plain text, or—if that text is ambiguous—is unsubstantiated by the history, negotiations,

1

and practical construction adopted by the parties. *Cf. Aguasvivas v. Pompeo*, 984 F.3d 1047, 1058 (1st Cir. 2021) ("the text of the treaty, even when viewed through a lens of liberal construction favoring extradition, will not accommodate the United States' interpretation."); *Greci v. Birknes*, 527 F.2d 956, 960 (1st Cir. 1976) ("While the views of the State Department are entitled to respect . . . its interpretation is in this instance contrary to both the plain language of the treaty and the available history.").

Courts interpreting treaties generally begin and end with the plain, unambiguous text. *See* Dkt. 22 at 7; *see also United States v. Duarte-Acero*, 208 F.3d 1282, 1285 (11th Cir. 2000) ("if the language of the treaty is clear and unambiguous, as with any exercise in statutory construction, our analysis ends there and we apply the words of the treaty as written"). Here, the Treaty's language— "being prosecuted" or "have been charged"—strongly indicates formal accusations or legal proceedings and there is no extrinsic evidence to the contrary. A cursory "arrest warrant" to further an investigation coupled with an investigator's "strong suspicion" simply does not equate to being "charged" or "prosecuted" under Article 1. The Treaty distinguishes "being prosecuted," indicating an active, ongoing judicial process, from "have been charged," which implies a past, established event, *i.e.*, a formal accusation. The text notably does not say "being charged," language that might cover a gap between arrest and formal accusation, but which evidences an intent to imminently prosecute – an intent not proven by the record in this matter.

Importantly, the Government concedes that Turkey has not filed charges against T.C. and that its investigation, which has continued for more than a year since the incident, is still incomplete. *See* Dkt. 27 at 13-14 (arguing "the Turkish prosecutor should not be penalized for wanting to gather all the relevant evidence—including T.C.'s statement—before instituting formal charges."). If the Turkish government genuinely intends to prosecute or charge T.C., one expects

a formal complaint, indictment, or some other clear action to initiate proceedings—not prolonged inaction that may never yield a charge or could leave T.C. in detention for up to five years before facing a Turkish court on the merits of any accusations. Dkt. 22 at 8.

The Government suggests that "charged" necessarily means only informally "accused", *see e.g.,* Dkt. 28 at 8-9, and that its interpretation is bolstered by Article 7, which does not require a standalone charging instrument to be submitted with an extradition request, *id.* at 9. But this reading is overly broad. If "charged" can be satisfied by mere suspicion or investigatory need, the Treaty's limitations would be rendered meaningless. The signatories intended a common-sense understanding of charged/prosecuted, aligning with fundamental U.S. criminal process. *See United States v. Washington*, 18 F. Supp. 3d 1172, 1217 (W.D. Wash. 1991) ("a Court should look to 'the <u>words used</u>—the words being interpreted, not literally nor loosely, but according to their ordinary signification. If the words be clear and explicit… they must be interpreted according to their natural and ordinary significance.'") (quoting *United States v. Choctaw Nation,* 179 U.S. 494, 506 (1900)) (emphasis in original). No text suggests that the parties here intended to allow extradition solely to further an investigation or to return an investigatory target for interrogation.

Furthermore, contemporaneous dictionaries at the time of the Treaty's signing (1979) confirm that "charged", as both a verb and a noun, in a legal context implies more than a mere investigatory target. *See* Charge (v.), Black's Law Dictionary (5th ed. 1979) ("In criminal law, to indict or formally accuse."), Exhibit 1 at 3; Charge (n.) Black's Law Dictionary (5th ed. 1979) ("Accusation of a crime by a formal complaint, information or indictment"), Exhibit 1 at 3; Charged, Black's Law Dictionary (5th ed. 1979) ("Accusation of crime by complaint, indictment, or information"), Exhibit 1 at 4. These definitions reinforce that "charged"– consistent with its plain and ordinary meaning at the time the Treaty was signed and understood by U.S. signatories

– refers to a formal accusation, which is lacking in this case.[1] Nor does interpreting "charged" by its plain meaning render "being prosecuted" superfluous. *See* Dkt. 27 at 8. Rather, "charged" contemplates the start of criminal proceedings, whereas "being prosecuted" covers the scenario in which someone flees amid criminal prosecution.

Finally, to counsel's knowledge, no court has ever permitted the extradition of a mere investigative target in the absence of a formal accusation. Put differently, no court has authorized extradition where the requesting nation relies solely on "strong suspicion" in a warrant calling for further inquiry. In *Assarsson*, the Seventh Circuit did not reach the substantive question of whether someone was "properly charged" for purposes of habeas but noted that authorities in Sweden had "duly and legally charged" Assarsson with arson, fraud, and attempted fraud. 635 F.2d 1237, 1239–44 (7th Cir. 1980). Other courts considering this issue have demanded clear prosecutorial intent—rather than investigation—before allowing extradition.

In *Emami v. U.S. Dist. Ct. for N. Dist. of California*, the Ninth Circuit found critical the German government's affirmative statement that Emami was wanted for prosecution—both in its request for provisional arrest and in its extradition request—thus satisfying the pertinent treaty requirement. 834 F.2d 1444, 1449 (9th Cir. 1987) ("[t]he German government has stated that Emami is wanted for prosecution both in its request for Emami's provisional arrest and in its request for Emami's extradition. These statements of intention on the part of the German government satisfy the requirement of article 2(2)(a).").[2] *Sacirbey*, though decided on the validity

---

[1] The fact that *In re Assarsson,* 635 F.2d 1237 (7th Cir. 1980) was decided in 1980, a year after the Treaty was signed would have no bearing on the understanding of the U.S. signatories here, *i.e.,* two-thirds of the U.S. Senate and President Carter. The other cited precedents following *Assarson* likewise were not potential anchors for the understanding of the U.S. signatories whose vote or signature was a condition precedent for the bilateral Treaty.

[2] The language of the U.S.-Germany extradition treaty was also more flexible than the language

of the arrest warrant (which had been voided by the dissolution of the issuing court), similarly recognized that both a valid warrant and an actual "intent to prosecute" are essential. *Sacirbey v. Guccione*, 589 F.3d 52, 65 (2d Cir. 2009). The Government in *Sacirbey* even acknowledged that a "clear intent" to prosecute is a prerequisite for extradition. *Id.* In *Manrique*, the Ninth Circuit interpreted "charged with" to mean "sought for prosecution". *Manrique v. Kolc*, 65 F.4th 1037, 1042 (9th Cir. 2023). Likewise, *Al-Nouri v. Blinken*, adopted the intent to prosecute requirement. No. CV-22-00633-PHX-GMS, 2024 WL 4436612, at *10 (D. Ariz. Oct. 7, 2024). Here, however, T.C. is not actually "sought for prosecution"; the Turkish government seeks only to continue its investigation. Without a clear showing that Turkey intends to prosecute or is seeking T.C.'s return for criminal proceedings—rather than mere questioning—the extradition request must be denied.

In sum, the Government's position here ignores the distinction between genuine prosecution and preliminary inquiry. No diplomatic records confirm its broad interpretation, and the Treaty's text does not permit extradition for an unformed, speculative, or investigatory purpose. For the reasons set forth above and in Petitioner's prior submissions, T.C. respectfully requests that this Court grant the requested habeas relief, deny Turkey's extradition request, and vacate the certification of extraditability.

---

here, allowing extradition for a "detention order". *Id.* at 1448.

Respectfully Submitted,

T.C., a Juvenile
By his attorneys,

*/s/ Martin G. Weinberg*
Martin G. Weinberg, Esq.
BBO #519480
20 Park Plaza
Suite 1000
Boston, MA 02116
(617) 227-3700

*/s/ Victoria Kelleher*
Victoria Kelleher
Kelleher & Maceo, P.C.
BBO #637908
53 State Street
Suite 500
Boston MA 02109
(978) 744-4126

*/s/ Maksim Nemtsev*
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
max@mnpc.law

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of this document was served, via ECF, on all counsel of record this day, April 14, 2025, and with the United States District Court, District of Massachusetts, 1 Courthouse Way, Boston, 02210.

*/s/ Martin G. Weinberg*
Martin G. Weinberg, Esq.